*Decision will be entered under Rule 50.*

R. A. SHILLINGLAW, PETITIONER, ET AL.,[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 54507, 54573, 54576-54581, 54591.

Promulgated August 22, 1935.

*L. A. Luce, Esq.*, and *John S. Glenn, Esq.*, for petitioners in Docket Nos. 54573, 54577-54581.

*Eugene Meacham, Esq.*, for petitioners in Docket Nos. 54507, 54576, 54591.

*B. M. Coon, Esq.*, and *John W. Smith, Esq.*, for the respondent.

---

[1] By agreement of counsel for the parties the proceedings of the following petitioners were consolidated with the above entitled case for hearing and report: H. H. Campbell; W. T. Hale; P. D. Houston; George A. Shwab; Whitefoord R. Cole; H. G. Hill, Sr.; J. J. Gray, Jr., and R. W. Hale.

**1240**

ARUNDELL: In 1926 the petitioners in these proceedings paid in certain sums to the American National Co. for the purpose of participating in the acquisition of stock of the Missouri State Life Insurance Co. On February 1, 1928, they sold out their interests in the venture for sums in excess of the amounts paid in. The only matter in dispute is whether the gain realized on the sale in 1928 is capital gain or ordinary income.

The applicable statute is section 101 of the Revenue Act of 1928, which, in brief, permits the computation of tax on capital gains at 12½ percent, and defines " capital gain " as the " taxable gain from the sale or exchange of capital assets consummated after December 31, 1921." Further, subsection (c) (8) provides that: " ' Capital assets ' means property held by the taxpayer for more than two years * * *."

In these cases there is no dispute as to the time of sale or the amount of gain realized. The question is whether or not the property was held for more than two years, and as the date of sale is agreed on, the question resolves itself into the narrow one of the date of acquisition.

It is not clear just what the petitioners here acquired and sold. The cases were tried on the theory that they bought and sold stock of the Missouri State Life Insurance Co., yet it is conceded that they never received stock certificates. They did receive " Certificates of Interest " in the purchase of the stock which were issued by the American National Co., and it appears from a revenue agent's report in evidence that in 1927 a holding company was formed and its stock issued to the participants in the venture. However this may be, the asset here involved is the stock of the Missouri State Life Insurance Co., and, whether acquired by petitioners directly or through others as their agents, the date of its purchase from Singleton is the fact to be decided.

It is the position of the petitioners that the signing of the contract by Singleton and Rogers Caldwell on January 29, 1926, coupled with delivery of the stock to the First National Bank in St. Louis and the definite commitment of the Davis group to Caldwell, definitely fixed the rights of the parties and constituted a sale of the shares of stock on that date. The so-called contract of January 29 is the letter of that date to the Guaranty Trust Co. of New York. We take it that petitioners mean that that constituted a contract of sale. The respondent's view is that title did not pass until February 13, 1926, when the initial payment of $2,000,000 was made.

Much of the testimony in these cases was directed to the negotiations and conferences preceding the acquisition of the stock, and to showing the practice of the petitioners and their associates in making up stock pools or syndicates. The purpose of this testimony was to establish that even though the promises of the petitioners to participate were oral, they were nevertheless regarded as binding commitments under their method of operation. Whatever may have been their views as to the binding effect of their agreements to participate, it is obvious that the petitioners' interests in the insurance company stock can not antedate the acquisition of the stock by Rogers Caldwell, for their interests were derived from his.

The letter of January 29, 1926, contained a clause stating that "The stock contained in both Schedules 'A' and 'B' has been purchased by the 'Buyer' from the 'Seller' * * *." That is all that there is in the letter indicating a sale as of that date. Other provisions indicate that it was not the intent of the parties that title should pass at that time. "* * * the rule has become clearly recognized that * * * the transfer of the property depends upon the intention of the parties * * *." Williston on Sales, 2d Ed., § 261. "As between the parties * * * the question of whether or not title has passed to the buyer, and, if so, when, depends on the intentions of the parties manifested at the time of the transaction or the making of the bargain." 55 C. J. § 531; *Charles C. Hanson*, 23 B. T. A. 590, 601. The letter of January 29 contained in paragraph 10 the provision quoted in the findings that the agreement was to become effective upon deposit of at least 100,540 shares of stock "and upon payment * * * by the Buyer of the sum of Two Million Dollars * * *." Unless and until both of those acts were performed the agreement was not effective and there was no sale. Had Caldwell failed to make the required deposit there would have been no question as to the right of Singleton to withdraw the stock from the depositary. The payment of the initial deposit of $2,000,000 was a condition precedent to the vesting of title under both the contract of January 2 and

1242

the depositary agreement of January 29, 1926. The parties were careful to withhold transfer of title until Caldwell had time to investigate the condition of the insurance company. The contract of January 2 allowed 30 days to make an examination and, if needed, 15 days more. Under that agreement Caldwell was to certify to the trustee that he had found Singleton's representations of fact to be true, otherwise the trustee was not to accept payment. This certification was not filed until February 12, when drafts for the $2,000,000 were delivered. There is evidence that the investigation of the insurance company being made on behalf of Caldwell and Davis was not completed until some time after January 29. Until the investigation was completed Caldwell withheld both certification and payment of any money, both of which were essential to a consummation of the sale. We are of the opinion that the depositary agreement contained in the letter of January 29, 1926, was not intended to and did not transfer title to the stock to Caldwell. Transfer of title did not take place until February 12, when the conditions precedent were complied with by the purchaser.

It follows that the petitioners here did not acquire an interest in the insurance company stock until after February 1, 1926, and it was not a capital asset in their hands when sold on February 1, 1928.

*Decision will be entered for the respondent.*